.The opinion of the court was delivered by
Huston, J.
John Klinker, in his lifetime, was seized of the land, from the sale of which the money in dispute arose. While so seized, he made the following single bill, which, it would seem, was intended to have been signed also by his son Jacob:
“ We promise to pay, or cause to be paid, unto John Williams, or order, the just and full sum of seventeen pounds two shillings and six pence, lawful money of the United States,' and that when Jacob Klinker, the son of Catherine Harpst, shall arrive at 21 years of age, with lawful interest to be paid annually, in trust for the use of the said Jacob Klinker, son of the said Catherine Harpst aforesaid, for value received. Witness our hands and seals the 13th day of March, 1811,
[seal.]
John Klinker. [seal.]

Witness,

John Klinker, Jr.”
John Klinker made his will on the 5th of January, 1812, which was proved on the 8th of April, 1812, and appointed his sons John and Jacob executors. The executors filed an inventory on the 2d of May, 1812, but have never settled any account. It also appears that he devised certain lands to be sold. He devised a certain *60 tract of land to be divided between his sons John and Jacob and Elias; and it was divided in such manner, that each got one hundred and thirty-two acres and some perches. The partition was perfected by conveyances, dated on the 4th of November, 1815. If necessary, I would consider each a purchaser from this date. On the 9th of November, 1815, Elias conveyed to Jacob his part, and on the same day took a mortgage from Jacob to secure 1200/., the balance unpaid of the purchase money, and a bond for the same money; and^clearly Jacob of this part was a purchaser. Abraham Jacoby, administrator of Elias Klinker, brought suit on this bond, and sold a part of the land, which Elias had sold to Jacob. This, suit was to November Term, 1823. Judgment was obtained on this suit, and executions issued; and on a venditioni exponas, to January, 1825, sixty-two acres part of the land was sold for $399.
A scire facias issued to revive this judgment, to April, 1829, and judgment, was obtained at January Term, 1830: a fieri facias to August, levied on another part of the land, and sold on a venditioni exponas, to November, 1830. The money produced by this sale was brought into court and claimed by the plaintiff in the execution, and by Jacob Klinker, the son of Catherine Harpst, who had come of age, and who, on the 3d of September, 1830, filed a claim in these words:
“Jacob Klinker, otherwise called Jacob Plarpst, files in the office of the prothonotary of Northampton County, the following copy of a.bill single, due by John Klinker, late, of Hamilton township, in the County of Northampton, deceased, to him the said Jacob, in pursuance of the act of assembly, passed the 4th of April, 1797, intitled an act supplementary to the act directing-the descent of intestate estates — that is to say,” (here follows a copy of thé single bill before given.)
The interest was paid until 1821, but it is not stated by whom or to whom. An auditor appointed by the court reported the above facts, and also that on the 10th of April, 1816, ten acres eighty-three perches, part of the estate of John Klinker, deceased, were conveyed by the devisees to John Kimblé.
That in 1817, Jacob Klinker conveyed two several parcels of the one hundred and thirty-two acres allotted to him to two different men — amounting'to above sixty acres.
That the residue of the land allotted to Jacob was sold at sheriff’s sale, on the defendant’s execution, before suit brought on his bond to Elias, and the money paid over to the plaintiffs in said judgment and execution.
That in 1817, Jacob conveyed small parcels of the land he bought from Elias, to four different persons, amounting, in all, to about forty-three acres.
That in 1818, John Klinker, the son, conveyed fifty-nine, acres, one hundred and twenty perches, part of his share, to Jacob, who, *61 in 1821, conveyed it to Joseph Klinker; and that in 1821, John- and Jacob, as executors, conveyed to Joseph Klinker, two lots, each of ten acres, being part of the land directed in the will to be sold for payment of the testator’s debts.
That in June, 1818, John Klinker' mortgaged the residue of the land allotted to him, to his mother, to secure her dower out of the whole estate.
That the mortgage of the plaintiff in the execution was the oldest lien, and intitled to the money, unless the plaintiff’s claim is valid.
The court decided that the plaintiff in the execution was entitled to the money, and ordered the money to him.
Jacob Klinker, or Harpst, claimed the money under the fourth section of the act of the 4th of April, 1797, which is as follows:
“ Whereas inconveniences may arise from debts of a deceased persons remaining a lien on their lands and tenements an indefinite time after their decease, whereby bona fide purchasérs may be injured, and titles become insecure, be it enacted, that no such debts,' unless they be secured by mortgage, judgment, recognizance, or other record,-shall remain a lien on such lands and tenements, longer than seven years after the decease of such debtor, unless an action for the recovery thereof be commenced and duly prosecuted against his or her heirs, executor, or administrators, within the said period of seven years, or a copy or particular written statement of any bond, covenant, debt or demand, where the same is not payable within the said seven years, shall be filed within the said period of seven years, in the office of the prothonotary of the county, where the lands lie: Provided always, that a debt due to a person who at the time of the decease of the said debtor, is a feme covert, in his or her minority, non compos mentis, in prison, or out of the limits of the United States, shall remain a lien on the said lands and tenements, (notwithstanding the said term be expired,) until four years after discoverture, or such person shall have attained the age of twenty-one years,” &c. &c.
Although the clause in favour of married women, infants, &c. &c. is now repealed, yet we must decide what is the proper construction of it. It has been contended that this, being a statute of limitation, does not apply to trustees. True no statute of limitation applies to cases strictly between trustee and cestui que trust, at least while both parties act in that capacity, and have not denied it; (Blanchard, 75, 6,) for the estate of the two, or the right of the two, as against the rest of the world, is one and the same; though in some countries they are suable in different courts. But if trustee and cestui que trust suffer an adverse claimant to possess lands for twenty-one years, their right is gone. If a debt was due to a deceased person, who died after it was due and demandable, and his execu *62 tor offadministrator suffer six years to elapse, the statute is a good plea, though the executor or administrator is a trustee for creditors or heirs who may be infants. A distinction has been taken, that if a debt become payable after the death of the creditor, the statute does not run until administration is taken out, for there is no person to sue. (BlanchardÍ, 106.) Admitting this to be so — though I-doubt its correctness, for if the next of kin do not administer, any other may, and I see no reason why a simple contract debt should be kept alive for ever, and be recoverable after vouchers and witnesses were lost — yet in this case there was a person to sue, or what was equivalent, file the claim agreeably to the directions of the act.
It was also urged, that the debt was really due to, and was the property of the present claimant, and not of Williams the trustee; and that infants are 'favoured in equity and law too. The other party reply, that secret liens are not favoured. I don’t like the phrase in legal proceedings. It has done some, perhaps much harm. The whole object and effect of statutes of limitations have been lost, or changed by some such phrases, and opinions founded on them. So much so, that in England they have by legislative enactment begun anew. These laws, like all others, are now in this country, construed agreeably to their expression, when plain; or if not explicit, according to their true meaning. They may occasion a loss of a just claim, but for one instance of this kind, they, in a much greater proportion of cases, save from unjust claims. As to length of time, they are obligatory to the letter. A day saves or bars a claim— because it is a legislative rule in a case which required legislative interference, and the rule must and does apply, whatever may be thought of the hardship of the case, or it becomes no rule at all. The kjw is so written to produce a general good, and has produced such results; why should it not be so decided in every respect 1 What effects will follow from the plaintiff’s construction 1 An infant must come of age in twenty years — but a married woman may.live fifty years; and a person may live and die out of the United States, and his heirs so continue a century; and if. the law keeps a latent claim all this time, a lien on lands descended, devised, alienated, or sold, by process of law, why, we can’t help it. But the law does in terms not extend to the case of a legal creditor of lawful age, and under no disability. Williams alone could sue at law, and would be barred, where there is a Court of Law or a Court of Chancery. Now it is settled, that where the right can be prosecuted and recovered at law, and is neglected until the statute is a bar, equity will not relieve. (Blanchard, 80, 1.) We affirm the decision of the Court of Common Pleas — because the case does not fall within the letter of the act — because it does not fall under the decisions that the statute of limitation shall not run, when there is no person to sue — for here was a person who had authority to receive the in *63 terest, and to file the claim; — and because, if we make the act apply to this case, it must also apply to cases of trusteesTor married women, and persons beyond sea; and we do not believe if we had the power of extending the' act, it would be in conformity with its spirit, or for the benefit of the community, to give indefinite countenance to a secret lien.
Proceedings affirmed.